UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

ZURICH VERSICHERUNGS :
GESELLSCHAFT AG a/s/o ADIDAS :   **MEMORANDUM DECISION AND**
INTERNATIONAL TRADING AG, :   **ORDER**
 :
                           Plaintiff, :   23-cv-5063-BMC
 :
        - against - :
 :
 :
CHINA EASTERN AIRLINES CO. LTD. and :
DSV AIR & SEA CO. LTD., :
 :
                           Defendants. :
-------------------------------------------------------- X

**COGAN**, District Judge.

    Plaintiff Zurich Versicherungs Gesellschaft AG ("Zurich"), as subrogee of Adidas

International Trading AG ("Adidas"), brings this action against defendants China Eastern

Airlines Co., Ltd. ("CEA") and DSV Air & Sea Co. Ltd. ("DSV") to recover for alleged physical

damage to cargo pursuant to the Montreal Convention.  Defendants move to dismiss on the

ground that plaintiff's claim is untimely.  Because plaintiff brought its action within two years of

when the carriage stopped, I find that the action is timely and deny the motions to dismiss.

**BACKGROUND**

    This case arises out of damage allegedly sustained to cargo that Adidas paid DSV to ship

from China to New York.  Defendant CEA was responsible for transporting the cargo via air.

Plaintiff seeks to recover for that alleged damage as Adidas's subrogee.  DSV crossclaimed

against CEA, seeking indemnification to the extent that DSV is held liable.

    Defendants filed separate motions to dismiss with nearly identical arguments.  They

claim that the Montreal Convention's two-year limitations period began on July 3, 2021, when

the cargo landed at John F. Kennedy International Airport ("JFK") in New York.  Because plaintiff filed its action on July 5, 2023, defendants argue it was brought two days after the close of the limitations period and the claim must be dismissed as time barred.  Plaintiff does not dispute that the aircraft arrived at JFK on July 3, 2021, but responds that the limitations period did not begin until July 7, 2021, which is when the cargo left JFK and entered the care of a third-party agent, who then brought the cargo to Adidas.  On that theory, plaintiff claims the action is timely.

If this action had been brought two days earlier, it would be timely under either interpretation of the statute of limitations.  Three days later, it would have been untimely under both.  But as luck would have it, the action was filed in the four-day window between when defendants say the limitations period ended and when plaintiff says it did.  Thus, this case presents the question of when the statute of limitations was triggered with a degree of precision normally reserved for law school hypotheticals.

## DISCUSSION

The Montreal Convention "applies to all international carriage of persons, baggage, or cargo performed by aircraft for reward," and therefore governs any disputes arising out of international carriage between signatory countries.  China and the United States are both signatories to the Montreal Convention and the parties agree that this dispute arises out of the carriage of cargo by aircraft from China to the United States.  Therefore, under Article 29, this matter is exclusively governed by the Montreal Convention.

Under Article 35 of the Montreal Convention: "The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the

date on which the carriage stopped."  Determining the limitations period in Montreal Convention

cases is particularly significant, as equitable tolling does not apply.  "[T]he limitation provision

in Article 35 creates a condition to suit, rather than a statute of limitations, and is therefore not

subject to tolling."  Ireland v. AMR Corp, 20 F. Supp. 3d 341, 345 (E.D.N.Y. 2014).  "A motion

to dismiss based on a statute of limitations should be granted 'only if a complaint clearly shows

the claim is out of time.'"  Mattson v. Farrell Distrib. Corp., 163 F. Supp. 2d 411, 414 (D. Vt.

2001) (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)).

      The first question to resolve is which of the three statute of limitations triggers listed in

Article 35 should apply in this case.  Defendants argue that the limitations period began on "the

date of arrival at the destination."  Plaintiff argues that the period did not begin until "the date on

which the carriage stopped."  The Montreal Convention does not provide guidance on how the

three triggers interact.

      Courts examining an identical provision on the Warsaw Convention, the Montreal

Convention's predecessor, have noted that the triggers "are not intended as alternatives that leave

plaintiffs to choose the one that most extends the limitation period.  Rather, they are obviously

designed to provide for different circumstances under which a claim against an air carrier might

arise."  Magnus Electronics, Inc. v. Royal Bank of Canada, 611 F. Supp. 436, 441 (N.D. Ill.

1985).  For instance, in the case of a shipment that never arrives, it would be reasonable for the

limitations period to begin "the date on which the aircraft ought to have arrived."  Here, where it

is possible that the alleged injury occurred in the four days between when the cargo landed at

JFK and when it left JFK, it would not make sense for time to start accruing on the date the

aircraft arrived at the airport, as that would mean the limitations period for the injury preceded

the injury itself.  Given that the drafters apparently intended to tailor the triggers to "different

3

circumstances under which a claim against an air carrier might arise," and defendants' view leads to an unusual outcome, it is worth considering plaintiff's approach, which is that time started when the "carriage stopped."

This raises the second question: assuming that plaintiff is correct that the limitations period began when the "carriage stopped," when did that occur?[1]  Plaintiff argues that carriage does not stop until the cargo leaves the care of the carrier, which occurs when the cargo leaves the airport and enters the care of the recipient or an authorized agent.  In support of this argument, plaintiff points to Article 18 of the Montreal Convention, which states that a carrier "is liable for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air."  Article 18 goes on to state that "carriage by air within the meaning of paragraph 1 of this Article comprises the period during which the cargo is in the charge of the carrier," and further specifies that "[t]he period of the carriage by air does not extend to any carriage by land, by sea or by inland waterway performed outside an airport."  Plaintiff argues that the explicit exclusion for liability of carriage "outside an airport" suggests that carriage within an airport's boundaries constitutes "carriage by air."

Case law confirms that liability under the Montreal Convention extends to the period in which a carrier transports cargo within an airport while the cargo is still in the carrier's charge.  See DHL Glob. Forwarding (China) Co. v. Lan Cargo, S.A., No. 18-cv-21866, 2019 WL 13067929, at *5 (S.D. Fla. June 17, 2019) ("if cargo was lost while it was in the charge of the carrier, and it was not in carriage by land, by sea or by inland waterway outside an airport, the Montreal Convention governs liability"); Danner v. International Freight Systems of

---

[1] As far as the Court is aware, the question of when carriage stops in the context of a Montreal Convention case involving alleged cargo damage has not been addressed by any federal court.

Washington, LLC, 2010 WL 3294678, * 5 (D. Md., Aug. 20, 2010) ("The period of carriage by air in such cases generally ends . . . . [when] the carrier has entrusted the delivery of goods to a trucker or other independent agency").  Plaintiff argues that because liability extends to the period between cargo landing at and leaving the airport, the statute of limitations should not accrue until cargo leaves the airport.

Defendant CEA responds with three counterarguments.  First, CEA argues that plaintiff improperly extrapolates Article 18's definition for "carriage by air" to Article 35.  Although it is true that Article 18 notes its definition for "carriage by air" applies "within the meaning of paragraph 1of this Article," that does not mean the definition cannot provide insight as to what "carriage" means elsewhere in the statute.  Under the presumption of consistent usage, it is reasonable to assume that "carriage" for the purposes of Article 35 is used similarly to "carriage by air" in Article 18.  See Commodity Futures Trading Comm'n v. Gorman, No. 21-cv-870, 2023 WL 2632111, at *4 (S.D.N.Y. March 24, 2023).  There is also intuitive appeal to plaintiff's argument that the statute of limitations "cannot sensibly begin to run while the cargo, and the conduct of the air carrier, remain subject to the provisions of the Montreal Convention."

Second, CEA argues that plaintiff adopts a view of Article 35 that is contrary to its plain language.  Defendants claim that if the drafters of the Montreal Convention wanted the limitations period to start when cargo leaves the airport, they would have said so clearly.  In support of this argument, CEA points to other sections of the Montreal Convention that specifically reference the date of delivery or receipt.  That the drafters tethered other portions of the Montreal Convention to the date of receipt sheds little light on the meaning of when "carriage stopped," especially since plaintiff does not argue carriage stops upon final receipt, but rather when cargo leaves the airport.

I also disagree that the plain meaning of "carriage stopped" is the point at which an aircraft arrives.  That may be one plausible reading, but so is the interpretation that carriage stops once cargo leaves the charge of the carrier.  Although the drafters could have said that carriage stops when cargo leaves the airport, the fact that they chose different words does not render plaintiff's interpretation unreasonable.

Third, CEA argues that plaintiff's view of Article 35 creates surplusage because it reads the "carriage stopped" trigger as always occurring at the same time or later than the "arrival at destination" trigger.  But the same is true when comparing the "arrival at the destination" to the "date on which the aircraft ought to have arrived," as the former necessarily occurs at the same time or later than the latter.  Of course, those two triggers differ when the aircraft arrives later than it ought to have.  Similarly, although there are some cases in which the carriage will stop at the same time the aircraft arrives (as both parties agree, virtually all cases involving passengers, as opposed to cargo, would fall into this category), the "carriage stop[s]" at a different time than the "arrival at destination" when there is a temporal gap between the aircraft landing and the cargo leaving the airport.

There may be occasions in which the limitations period should begin when the aircraft arrives at the airport, even if the cargo does not leave the airport until a later date.  For instance, both defendants express concern that the limitations period could stall indefinitely if cargo never leaves the airport, such as when the carriage is delayed or the recipient refuses delivery.  Although the Court will not rule on facts not before it, the limitations period in those scenarios may very well be triggered by the date of arrival or expected arrival, rather than when the carriage stops, as nothing in the Montreal Convention suggests that the limitations period begins when all potential triggers are exhausted.  Defendants' parade of horribles thus highlights the

drafters' wisdom in providing multiple triggers to account for the diverse circumstances in which disputes may arise under the Montreal Convention.

CEA cites cases that strictly apply the two-year limitations period under the Montreal Convention.  It argues that this caselaw supports the view that the statute of limitations under the Montreal Convention should be interpreted to start running as soon as an aircraft arrives, even when the cause of action occurs after an aircraft arrives.  In Narayanan v. Brit. Airways, 747 F.3d 1125 (9th Cir. 2014), plaintiff, an estate administrator, brought a wrongful death suit against defendant airline after the decedent was allegedly denied supplemental oxygen on an international flight.  The decedent died six months after the flight landed.  The estate brought suit less than two years after he died, but more than two years after the plane landed.  The court held that the two-year statute of limitations began when the aircraft arrived and dismissed the suit as time barred, even though plaintiff's wrongful death cause of action did not materialize until six months after the aircraft arrived.  CEA cites two other decisions in which courts have held that the statute of limitations begins on the date when the aircraft arrived or ought to have arrived. See Von Schoenebeck v. Koninklijke Luchtvaart Maatschappij N.V., 659 F. App'x 392 (9th Cir. 2016); Duay v. Continental Airlines, Inc., No. 10-cv-1454, 2010 WL 5342824 (S.D. Tex. Dec. 21, 2010).

All three cases that CEA cites in support of the limitations period beginning upon arrival arose in the context of injuries to passengers.  There is unlikely to be a difference between when the aircraft landed (or should have landed) and when the "carriage stopped" in cases involving passenger injuries, as people are rarely held at airports for a day or more after landing.  But as this case demonstrates, in disputes involving damage to cargo, the carriage might not stop until days after the aircraft arrives.  In such disputes, especially where the cargo damage could have

occurred while the carrier was holding the cargo at the airport, the limitations period does not begin until the cargo leaves the airport.

Additionally, to the extent that <u>Narayanan</u> can be read to suggest that the limitations period may begin before injury incurs, there is a significant difference between the facts in <u>Narayanan</u> and those of a case in which cargo is damaged while in the charge of the carrier at the airport.  In <u>Narayanan</u>, the alleged injury (failure to provide supplemental oxygen) occurred before the aircraft arrived, which is when the limitations period began – it was only the extent of the injury (death) that did not materialize until after the limitations period began.  If the limitations period were triggered upon the aircraft's arrival in the case of cargo damaged at the airport, that would mean that the limitations period begins before plaintiff incurred any injury. The Court declines to adopt an interpretation of the Montreal Convention that would lead to such an outcome.

DSV raises two additional points in its motion to dismiss, both of which are unconvincing.  First, DSV claims that plaintiff's interpretation of Article 35 is only sensible if the language were "carriage ended" or "carriage concluded," rather than "carriage stopped."  I disagree.  Although there are situations in which the meaning of these words diverge, the use of "stopped" in Article 35 is entirely consistent with the completion of the carriage period, and thus could be synonymous with "ends," "concludes," and any number of words denoting completion. Second, DSV cites another case from this district in which the court determined that the limitations period began when the aircraft ought to have arrived, not when the carriage stopped. <u>See</u> <u>LAM Wholesale, LLC v. United Airlines, Inc.</u>, No. 18-cv-3794, 2019 WL 1439098, at *2 (E.D.N.Y. March 31, 2019).  But the court in <u>LAM</u> did not determine when the carriage stopped, and instead decided that on the facts before the court – which are distinguishable from those

before this Court because of the amount of time between the aircraft landing and the cargo arriving to the plaintiff and because the cargo ended up at a different airport than was agreed upon – that the proper trigger was the date on which the aircraft ought to have arrived.  I find that a different limitations period trigger applies to the different facts before me, consistent with the drafters' apparent intent to provide flexibility to apply the trigger that best fits the circumstances of each case.

## CONCLUSION

For the foregoing reasons, the Court holds that the limitations period began when the carriage stopped, which occurred when the cargo left JFK on July 7, 2021.  Therefore, the instant action was timely when plaintiff brought it on July 5, 2023.  Defendant CEA's [17] motion to dismiss and defendant DSV's [19] motion to dismiss are denied.  The Court will set the case down for a final pretrial conference and trial by separate order.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       January 10, 2024

9